UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――

WILLIAM HAMILTON,

                         Plaintiff,

                V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                     Defendant.

―――――――――――――――――――――――――――――

**REPORT AND
RECOMMENDATION**

09-CV-1199
(FJS/VEB)

## I. INTRODUCTION

In October of 2006, Plaintiff William Hamilton applied for disability and disability insurance benefits under the Social Security Act.  Plaintiff alleges that he had been unable to work since September of 2006 due to various physical impairments.  The Commissioner of Social Security denied Plaintiff's application.

Plaintiff commenced this action by and through his attorney, Peter A. Gorton, Esq., seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 18).

## II. BACKGROUND

The relevant procedural history may be summarized as follows: Plaintiff applied for benefits under the Social Security Act on October 6, 2006, alleging disability beginning on September 25, 2006. (T at 88-92, 105).[1]   The claims were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").   A hearing was held in Binghamton, New York on April 29, 2009, before ALJ Elizabeth Koennecke. (T at 20). Plaintiff, represented by counsel, appeared and testified.  (T at 25-54).   On July 31, 2009, ALJ Koennecke issued a written decision finding that Plaintiff was not disabled as defined under the Social Security Act. (T at 7-15).  The ALJ's decision became the Commissioner's final decision on October 2, 2009, when the Appeals Council denied Plaintiff's request for review.  (T at 1-3).

Plaintiff, by and through his attorney, timely commenced this action on October 26, 2009.  (Docket No. 1).  The Commissioner interposed an Answer on February 9, 2010. (Docket No. 8).  Plaintiff filed a Brief in support of his action on June 30, 2010. (Docket No. 13).  Defendant filed a Brief in opposition on September 17, 2010. (Docket No. 16).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and that this case be remanded for further

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 9).

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

administrative proceedings.

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the

court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011.  The ALJ found that Plaintiff had not engaged in substantial gainful activity since September 25, 2006, the alleged onset date.  (T at 9).

The ALJ concluded that Plaintiff had the following impairment, which the ALJ considered "severe," as defined under the Act: bilateral shoulder impingement syndrome. (T at 10).  However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 11).

The ALJ concluded that Plaintiff retained the residual functional capacity to lift and carry 10 pounds above waist height and stand/walk/sit without limitation. (T at 11).  The ALJ determined that Plaintiff could not perform right-sided overhead reaching and that any

resting requirements could be accomplished during typical breaks. (T at 11).  Plaintiff was found to be unable to perform his past relevant work as a heavy equipment operator. (T at 13).

Considering Plaintiff's age (40 years old as of the alleged onset date), education (limited), work experience, and residual functional capacity, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (T at 13-14).  As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Act from September 25, 2006 (the alleged onset date) through July 31, 2009 (the date of decision), and was therefore not entitled to benefits. (T at 14-15).  As noted above, the ALJ's decision became the Commissioner's final decision on October 2, 2009, when the Appeals Council denied Plaintiff's request for review.  (T at 1-3).

### 2.    Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed.  Plaintiff offers four (4) principal arguments in support of this position.  First, Plaintiff asserts that the ALJ erred by finding that Plaintiff's carpal tunnel syndrome was a "non-severe" impairment. Second, Plaintiff contends that his lumbar spine, knee, hip, and hernia conditions, as well as diverticulitis, should have been considered severe impairments.  Third, Plaintiff argues that the ALJ's credibility determination was flawed. Fourth, Plaintiff contends that the ALJ should have consulted a vocational expert.  This Court will address each argument in turn.

### a.    Severity of Impairment - Carpal Tunnel

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental

ability to do basic work activities. <u>See</u> 20 C.F.R. §§ 404.1520(c), 416.920(c).

The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." <u>Gibbs v. Astrue</u>, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. <u>Miller v. Comm'r of Social Sec.</u>, No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); <u>see</u> <u>also</u> 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," <u>Dixon v. Shalala</u>, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." <u>Coleman v. Shalala</u>, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" <u>Rosario v. Apfel</u>, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting <u>Bowen v. Yuckert</u>, 482 U.S. 137, 154 n. 12 (1987)).

In this case, Plaintiff's treating physician, Dr. Cicoria, diagnosed bilateral carpal tunnel syndrome in October of 2006. (T at 151). Testing conducted in December of 2006 was found to be consistent with carpal tunnel neuropathy. (T at 226). Dr. DeThomas, an independent medical examiner, discussed Plaintiff's carpel tunnel diagnosis in the context of whether the condition was "causally related" to a workplace injury for purposes of

7

worker's compensation benefits. (T at 166).

In January of 2007, Dr. Cicoria noted "definite numbness and tingling and a carpal tunnel neuropathy." (T at 173).  In February of 2009, Dr. Cicoria indicated that Plaintiff was experiencing pain and numbness in both hands and  opined that Plaintiff would "most likely . . . require a bilateral carpal tunnel depression." (T at 230).  Plaintiff testified that he experiences constant pain and numbness in his hands and wrists. (T at 38).  He often drops items and has difficulty with household chores. (T at 39-40).

The ALJ concluded that Plaintiff's carpal tunnel syndrome was not a severe impairment.  (T at 10).  For the following reasons, this Court finds that the ALJ's decision was not supported by substantial evidence or in accord with applicable law.

First, the ALJ stated that Plaintiff did not seek any treatment for carpal tunnel between October 2006 and February 2009. (T at 10).  This is factually incorrect, as Plaintiff consulted with Dr. Cicoria in January of 2007, presumably, with the intent to receive treatment if the doctor would have considered it necessary. (T at 173).  During that visit, Dr. Cicoria noted impingement syndrome, rotator cuff tendinitis, and carpal tunnel syndrome. (T at 173).  As mentioned above,  Dr. Cicoria noted "definite numbness and tingling and a carpal tunnel neuropathy." (T at 173).

While it is true that Plaintiff apparently did not seek medical care or treatment between January of 2007 and February of 2009, this does not, without more, establish that the impairment was non-severe.  To the extent the ALJ used the lack of treatment as a basis for discounting Plaintiff's testimony concerning the extent of his impairment, the ALJ was obliged to consider whether the lack of treatment during that time period had another

8

cause.

While a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed," an ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p.

In this case, the record indicates that Plaintiff's medical care for carpal tunnel may not have been covered by workers' compensation insurance because the independent medical examiner questioned whether the condition was causally-related to a workplace injury. (T at 166).  At a minimum, the ALJ should have explored the issue further to determine whether this coverage issue explained the treatment gap and/or whether Plaintiff had some other explanation for not seeking medical care.

The ALJ also opined that Plaintiff's carpal tunnel syndrome "could be treated by surgery, which the claimant has not received." (T at 10).  However, it is not apparent that the ALJ considered whether Plaintiff might have had a viable reason for not pursuing surgical treatment.  See SSR 96-7p (providing that an ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment").

The ALJ referenced a questionnaire completed by Dr. Cicoria in April of 2009, in which Dr. Cicoria opined that Plaintiff's limitations would severely impact his ability to

sustain a work pace.  (T at 191).  In support of his finding, Dr. Cicoria referenced his diagnosis of "repetitive motion disease and occupationally related carpal tunnel syndrome." (T at 192).  The ALJ discounted the impact of Dr. Cicoria's opinion, noting that the doctor had limited the time period of his answers to the two-month period between February 2009 and April 2009. (T at 192).  However, before discounting the opinion on that basis, the ALJ should have re-contacted Dr. Cicoria.  The doctor's statement limiting the time period of his answers to a two-month period is contradicted by the medical records referenced above, which indicate that Dr. Cicoria diagnosed carpal tunnel syndrome in October of 2006 (T at 151) and referenced Plaintiff's definite numbness and tingling and a carpal tunnel neuropathy" in January 2007. (T at 173).

The ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel" to determine upon what information the treating source was basing his opinions. Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y.2005); see also 20 C.F.R. §§ 404.1212(e)(1), 416.912(e) (1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Failure to re-contact is error. See Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").  In this case, the ALJ should have re-contacted Dr. Cicoria to explain the apparent inconsistency.

Lastly, this Court has considered whether the ALJ's errors with regard to the analysis

of Plaintiff's carpal tunnel syndrome might be harmless.  The ALJ did find that Plaintiff had a severe impairment (bilateral shoulder impingement syndrome) and continued with the sequential evaluation.  There is some authority to suggest that an error with regard to the evaluation of one impairment at step two can be harmless if the ALJ continues with the sequential evaluation process. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987)("[T]he Secretary found that Maziarz suffered from the severe impairment of coronary artery disease, status post right coronary artery angioplasty and angina pectoris. Accordingly, the Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); McCartney v. Commissioner of Social Sec., Civil Action No. 07-1572, 2009 WL 1323578, at *16 (W.D.Pa. May 8, 2009)("Even if the Court was to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments."); Portorreal v. Astrue, No. C.A. 07-296ML, 2008 WL 4681636, at *3 (D.R.I. Oct. 21, 2008).

However, in the present case, this Court finds no indication in the decision that the ALJ considered the impact of Plaintiff's carpal tunnel syndrome on his ability to perform work-related functions.  Rather, it appears the ALJ dismissed the diagnosis after concluding the impairment was non-severe.  This is significant because the ALJ found that Plaintiff retained the RFC to perform the full range of sedentary work (T at 14) and "[m]ost unskilled

sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity." SSR 96-9p. "Any *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." Id. (emphasis original).

Accordingly, this Court finds (1) that the ALJ's conclusion that Plaintiff's carpal tunnel syndrome was non-severe is not supported by substantial evidence and (2) the ALJ's error cannot be considered harmless because her decision lacks adequate consideration of the nature and extent of Plaintiff's manipulative limitations.  Accordingly, a remand should be ordered for reconsideration and further development of the record.

### b.    Other Severe Impairments

Plaintiff also alleges that he suffers from an umbilical hernia, diverticulitis, and back/hip/knee pain, which he contends the ALJ should have found to be severe impairments.

With regard to Plaintiff's hernia condition, Plaintiff had two repair surgeries (the first in June 2008, the second in March 2009). (T at 186-87, 189). Following the March 2009 surgery, the surgeon limited Plaintiff to lifting no more than 20 pounds for two weeks. (T at 189).  The ALJ found that, with respect to this impairment, there was no evidence of "work-related limitation of function that has continuously lasted for a twelve month period." (T at 11).  Plaintiff has pointed to no medical evidence that contradicts the ALJ's finding and this Court finds no error in the ALJ's conclusion that Plaintiff's hernia was not a severe impairment.

Plaintiff also has a history of diverticulitis.  (T at 159).  Plaintiff testified that he

experiences frequent "heavy" rectal bleeding, which interferes with his ability to perform work. (T at 44-46).  The ALJ noted the lack of any records of Plaintiff seeking or receiving treatment for diverticulitis or medical evidence concerning work-related limitation of function caused by this impairment. (T at 11).  As such, the ALJ found Plaintiff's diverticulitis to be a non-severe impairment.  The ALJ's analysis in this regard was inadequate.  At a minimum, the ALJ was obliged to explore why Plaintiff would not seek treatment for an impairment that (according to Plaintiff's testimony) imposed a fairly significant level of limitation.  See SSR 96-7p.

Plaintiff also points to back, hip, knee, and ankle pain arising from a 1995 accident in which a chimney fell on him. (T at 32-34, 36, 193-205).  The ALJ did not specifically reference Plaintiff's back pain, but noted that the record did not "include any treatment for any disorders of the right hip, knee, or ankle during the period since the alleged disorder." (T at 11).  This finding should also be revisited on remand.  The fact that Plaintiff was not treated for these conditions after the alleged onset date does not necessarily mean that the pre-existing impairments, individually or in combination, imposed only a *de minimis* limitation on Plaintiff's ability to perform basic work activities.

For the foregoing reasons, this Court recommends a remand for reconsideration and further development of the record concerning the severity of Plaintiff's diverticulitis and back/hip/knee/ankle pain.

### c.   Credibility

Subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged.  See 42

13

U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p;

Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain

after weighing the objective medical evidence in the record, the claimant's demeanor, and

other indicia of credibility, but must set forth his or her reasons with sufficient specificity to

enable us to decide whether the determination is supported by substantial evidence." Lewis

v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's

contentions, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the

plaintiff's contentions are not supported by objective medical evidence, the ALJ must

consider the following factors in order to make a determination regarding the plaintiff's

credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;

6.    Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;

7.    Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In the present case, Plaintiff testified that he experiences "constant pain" in various parts of his body. (T at 33).  He experiences discomfort when sitting or standing. (T at 33). Plaintiff's shoulder pain ranges from a 3 to 6 on a scale of 1-10. (T at 34).  He experiences shoulder pain when lifting a gallon of milk. (T at 35).  Plaintiff's hip problem interferes with his ability to sit, stand, and walk for prolonged periods. (T at 36).  He estimated his ability to sit at 20 to 30 minutes before experiencing discomfort. (T at 37).  Ankle and knee problems cause difficulties with regard to walking. (T at 37).  Plaintiff testified that he experiences numbness, tingling, and pain in his hands and wrists, causing him to drop items and interfering with household chores. (T at 38-40).  Plaintiff stated that his pain interferes with his concentration and causes fatigue. (T at 42-44).  As noted above, Plaintiff testified that he experiences frequent "heavy" rectal bleeding, which interferes with his ability to perform work. (T at 44-46).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully

15

credible. (T at 12).  In particular, the ALJ noted Plaintiff's receipt of unemployment benefits, which required Plaintiff to certify under New York law that he was ready, willing, and able to accept full-time employment. (T at 28-30, 48-50).  However, there was some question as to whether Plaintiff fully understood the unemployment certification (T at 48-50), a fact the ALJ seems not to have acknowledged.[4]

In addition, the ALJ discounted Dr. Cicoria's opinion that Plaintiff could have a "severe" limitation with regard to sustaining work pace on the grounds that this opinion was inconsistent with Dr. Cicioria's other findings. (T at 13).  As discussed above, it was error for the ALJ to discount Dr. Cicioria's opinion on this basis without re-contacting him to address the apparent inconsistency.

Lastly, there was no medical evidence of record contradicting Plaintiff's testimony concerning the manipulative limitations imposed by carpal tunnel syndrome or the limitations caused by diverticulitis.  The ALJ appears to have discounted Plaintiff's testimony regarding these limitations solely due to the lack of treatment.  As outlined above, it was error for the ALJ to follow that course without considering and exploring Plaintiff's reason(s) for not seeking treatment.  Accordingly, the ALJ's credibility determination should be revisited on remand.

### d.    Consultation of Vocational Expert

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age,

---

[4]Plaintiff testified that he did not understand that his application for unemployment benefits was inconsistent with his simultaneous pursuit of Social Security disability benefits.  In fact, Plaintiff explained that he applied for unemployment benefits based upon the advice of his workers' compensation attorney and testified that he advised the unemployment office of his pending Social Security application. (T at 48-49).

education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

17

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

In this case, the ALJ used the Grids in reaching her disability determination.  (T at 13-14).  As the Second Circuit explained in Pratts v. Chater, the applicability of the Grids is determined on a case-by-case basis. Pratts, 94 F.3d at 39 (citing Bapp, 802 F.2d at 605-06).  When nonexertional impairments are present, the ALJ must determine whether those impairments "significantly" diminishes the claimant's work capacity beyond that caused by his or her exertional limitations. Id.  A claimant's work capacity is "'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" Id. (quoting Bapp, 802 F.2d at 606).

As outlined above, the record suggests that Plaintiff suffers from non-exertional impairments, such as pain and numbness in his hands and wrists and frequent bouts of rectal bleeding.  The ALJ did not specifically address these non-exertional impairments in the context of her step five analysis. (T at 14). In addition, the ALJ's reliance on the Grids was based upon her determination that Plaintiff retained the RFC to perform the full range of sedentary work, which determination was flawed for the reasons outlined above.  As such, this aspect of the ALJ's decision will also need to be revisited on remand.

### 3.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm,

18

reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

### IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's motion for judgment on the pleadings be granted, Defendant's motion for judgment on the pleadings be denied, the decision of the Commissioner be reversed, that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:    March 29, 2012

Syracuse, New York

# V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

March 29, 2012

Victor E. Bianchini
United States Magistrate Judge